24 So.2d 228

**JOHNSON v. STATE.**

**4 Div. 883.**

Court of Appeals of Alabama.

Aug. 7, 1945.

Rehearing Denied Oct. 30, 1945.

O. S. Lewis, of Dothan, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Chas. M. Cooper, Asst. Atty. Gen., for the State.

**BRICKEN, Presiding Judge.**

Originally, as presented and filed, the indictment in this case contained three counts. Count two thereof was exactly the same as count one, and the court charged count two out, leaving counts one, and three, upon which the defendant was put to trial.

Count 1 charged the offense of robbery, and was (omitting caption, etc.) in words and figures as follows: "The Grand Jury of said County charge that, before the finding of this Indictment Dan Johnson, whose name is to the grand jury otherwise unknown, feloniously took one Ford automobile, of the value of $1,000.00, the property of L. Y. Toler, from his person or in his presence, and against his will, by violence to his person or by putting him in such fear as unwillingly to part with the same."

Count 3 charged grand larceny and reads as follows: "The grand jury of said county further charge that, before the finding of this indictment, Dan Johnson, whose name is to the grand jury otherwise unknown, feloniously took and carried away one Ford automobile, of the value of $1,000.00, the personal property of L. Y. Toler, against the peace and dignity of the State of Alabama."

The trial resulted in the conviction of defendant under said count 3 whereupon, as the law required, the defendant was adjudged guilty of the offense of grand larceny, and the court sentenced him to imprisonment in the penitentiary for a period of five years. Judgment of conviction was accordingly pronounced and entered, from which this appeal was taken.

The record discloses that Dan Johnson, the defendant, a white man, was 28 years of age at the time of his trial. Also that he is married to the niece of Mr. Toler, the alleged injured party, and with his wife and children lived in a house belonging to Toler, in close proximity to Mr. Toler's home. That he served in the United States Army for about ten years and had been recently discharged from the army on account of his physical condition. That he suffered extreme pain in his back due to arthritis, and very nervous condition generally. That the Army Surgeon prescribed and furnished him with capsules to alleviate or palliate the pains and that on the day in question he had taken several of these capsules, and in addition thereto, after midday, he had consumed a pint or more of whiskey. Defendant testified as a result of the foregoing his mind was a perfect blank and that he had no recollection whatever of having committed the act complained of or of any of the facts or circumstances in connection therewith. That he never regained consciousness until he found himself in jail that night after the whole thing was over.

The facts as to the taking of the car are without dispute. The testimony shows that Mr. Toler's Ford car was parked in front of his house and he, Toler, was asked this question:

"Q. Now, tell what Dan Johnson did there on that occasion and at that place. A. I was standing near my store by the side of the road talking to his brother and he came walking around from the front yard from my place and my automobile was standing in front of the house and he walked directly towards the car and his brother, he remarked he was going to my car, and I walked out hurriedly, in fact I trotted part of the way to get to the car, and when I got to the automobile he was seated in the car under the steering wheel and had reached down like that (indicating) like he was trying to switch it on, and the key was in the car, and I asked him not to drive it away and he commenced cursing me. His brother was standing across the road over there near the store and I called him to come over there, and he came over, and when we walked up about like from here to the wall over that Dan looked at him and said, You are my brother, you think I won't kill you? And his brother stopped there and I turned and walked away from the automobile back to my place of business, and he cranked up the car and left with it immediately, just as quick as I walked back to the store, and his brother told me to call the law."

Appellant's counsel is correct in the insistence that "The evidence is also without dispute that the defendant brought the car back in about one hour and a half, and parked it near where he got it, and parked it in front of the dwelling of L. Y. Toler, the owner of the car. No one brought him back. No one arrested him, the car was voluntarily brought back and

parked as stated. All of this was done in broad open daylight."

The trial of this case appears to have been long drawn out. It also appears that the learned trial judge was very patient and fair throughout. Numerous exceptions were reserved to the court's rulings and are here insisted upon as error. However, from the view we take of this case we need not advert to or discuss many of these insistences.

■ Earnest counsel for appellant makes the anomalous contention that the verdict of the jury had the dual effect of convicting the defendant for the offense of grand larceny as charged in the third count, and because said charge was included in the robbery as charged in the first count acquitted the defendant by its verdict based upon the third count.

The foregoing insistence is made the basis of several grounds on the motion for a new trial. We are not in accord with appellant's counsel upon the proposition under discussion. Each count is, in legal contemplation, a separate indictment and must be treated as a whole. A joinder of counts is allowable under provisions of the Statutes, but there is no authority for the proposition that a verdict of conviction for larceny in a separate count in the indictment operates to acquit as to the larceny charge included in a separate count for robbery contained in the same indictment. "A conviction and judgment on one of several counts, with no verdict on the others, is an acquittal as to the other counts, especially where the jury is given separate forms of verdicts covering each count, and at least where accused is charged with distinct offenses in the several counts; but where the separate counts charge the same crime, a verdict of guilty on one count is not an acquittal on the others." 23 C.J.S., Criminal Law, § 1403, pp. 1090, 1091.

■ The controlling and conclusive proposition in this case, all facts being, as stated, without material conflict, is whether or not the accused's mind was in condition to form the required intent to commit the offense. As stated in the case of Gordon v. State, 52 Ala. 308, 23 Am.Rep. 575 (opinion by the great Chief Justice Brickell): "'All crime exists, primarily, in the mind.' A wrongful act and a wrongful intent must concur, to constitute what the law deems a crime. When an act denounced by the law is proved to have been committed, in the absence of countervailing evidence, the criminal intent is inferred from the commission of the act. The inference may be, and often is removed by the attending circumstances, showing the absence of a criminal intent."

In the case of Mooney v. State, 33 Ala. 419, 421, the court said: "Drunkenness certainly does not excuse or palliate any offense. But it may produce a state of mind, in which the accused would be totally incapable of entertaining or forming the positive and particular intent requisite to make out the offense. In such a case, the accused is entitled to an acquittal of the felony, not because of his drunkenness, but because he was in a state of mind, resulting from drunkenness, which affords a negation of one of the facts necessary to his conviction."

■■ We have given careful and attentive study and consideration to all the evidence in this case, and are clear to the conclusion that this evidence affirmatively shows that at the time of the alleged commission of the offense this defendant's mind was so impaired from the use of the capsules and the large quantity of whiskey he had consumed, narrated herein above, as to render him incapable and totally irresponsible for his acts. Moreover, it is clearly apparent that from all the testimony his conduct and every act on the occasion was so abnormal as to refute even the suggestion that he was in possession of his mental faculties. There is no evidence in this case tending to show the contrary, therefore under the universal holdings in this and all other states the defendant should have not been held responsible for the acts complained of. It is not the province or purpose of the law to hold a totally irresponsible person, a person of disordered and deranged mind (without reference to the cause of such condition), accountable for his acts. Such would be unconscionable, and no state in this Union, nor has any civilized country ever established such a rule or precedent. And, as here appears, if from the use of drugs, or intoxication from the use of whiskey or other spirituous liquors, the accused was incapable of forming a felonious intent, he could not under the law be convicted of larceny.

■ In line with the foregoing the learned trial judge, in charging the jury, correctly stated (among other things):

220

"And also in the case of larceny, the felonious intent to steal being an essential ingredient or necessary element of that offense, if a person is so drunk, or so under the influence of intoxicating liquor or drugs, that he is incapable of forming that felonious intent, then, in that event, the party could not be convicted of larceny. If a man is mentally incapacitated by reason of drink or drugs, if he isn't capable of forming an intent to steal, then he could not be guilty, since the felonious intent to take the property is a necessary element of the crime."

Under the provisions of Title 7, Section 764, of the Code 1940, we hold that error prevailed by the action of the court in overruling defendant's motion for a new trial. We are of the opinion that the verdict of the jury was contrary to the law, and also contrary to the evidence adduced upon the trial. It is therefore wrong and unjust and cannot be permitted to stand.

As hereinabove stated, numerous other insistences of error are presented, but from what has been said, we see no necessity to discuss them.

Reversed and remanded.